# In the United States District Court for the Western District of Texas

| | | |
|---|---|---|
| ARMANDO MONTALVO, ET. AL. | § § § | |
| | § | SA-09-CV-247-XR |
| v. | § § | |
| WILLIAM STRICKLAND, ET. AL. | § | |

## ORDER

On this day came on to be considered Defendants' motion to strike Plaintiffs' expert witness's testimony regarding future expected earnings of Bizefficient Software, LLC (docket no. 26).

## Background

On December 10, 2008, Defendant William Strickland was driving a Western Star Conventional Diesel owned by Defendant Cougar Canyon Trucking, Ltd., when he struck the vehicle driven by Nelson Montalvo, Jr., resulting in Mr. Montalvo's death. The accident occurred at the intersection of Texas State Highway Loop 1604 and Texas State Highway 151 in San Antonio, Bexar County, Texas. Defendant Strickland is an owner-operator for Mullen Trucking, L.P.

Plaintiff Armando Montalvo filed suit as representative of the estate of the decedent, Nelson Montalvo, Jr., and for the benefit of Nelson Montalvo,

Sr., and Milagros Montalvo against Defendants William Strickland, Mullen Trucking L.P., and Cougar Canyon Trucking, Ltd., asserting claims for negligence and gross negligence.

Plaintiffs have retained Gene Trevino, Ph.D. to render an opinion regarding the economic damages suffered by the deceased. At the time of his death, Mr. Montalvo, age 32, was employed as a senior programmer/analyst with Wachovia. However, prior to this incident he intended to work as an employee with Bizefficient Software, LLC and become an equity partner with Max Westerfield. In his expert report, Dr. Trevino has included projected earnings from the expected Bizefficient employment.

**Defendant's Motion**

Defendants, citing, *Southwest Battery Corp. v. Owen*[1], argue that the earnings that the decedent may have earned from Bizefficient are too uncertain and speculative and should be stricken from the expert report.[2]

**Analysis**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court provided extensive guidance for the application of the dictates of Rule 702, clarifying the court's responsibility of "screening such evidence." 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). When a party proffers expert testimony, the district court must determine whether the testimony is both

---

[1] 131 Tex. 423, 115 S.W. 2d 1097 (1938).

[2] Defendants do not challenge Dr. Trevino's qualifications nor do Defendants challenge Dr. Trevino's evaluation of economic damages based upon Nelson's employment with Wachovia.

2

relevant and reliable when ruling on its admission. *See id.* at 590-91. In assessing the relevance and reliability of proffered expert testimony, the district court must determine: whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue. *Id.* at 592-93.

Plaintiff brings his claim under state law. This case was filed here on the basis of diversity jurisdiction; therefore, we are bound by *Erie* to apply Texas substantive law, while following federal procedural law. *Kona Tech. Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2003). State law governs the measure of damages. *Smith v. Industrial Constructors, Inc.*, 783 F.2d 1249, 1250 (5th Cir. 1986).

Dr. Trevino opines that the following monetary amounts represent the net expected earnings that would have been available to Nelson's survivors as of March 29, 2010:

|  | Past | Future | Total |
|---|---|---|---|
| Wachovia Earnings | $38,495 | $790,144 | $828,639 |
| Including Bizefficient | $85,385 | $1,752,592 | $1,837,977 |
| Incl. Distributions | $106,897 | $2,194,144 | $2,301,041 |

It appears uncontested that at the time of Nelson's death, Bizefficient

3

had not yet formally started as a business, and accordingly had not shown any profits in the past. As of the date of Dr. Trevino's deposition (November 18, 2009), the company had not yet sold anything, and had only two prospective contracts.

Dr. Trevino bases his conclusions on the premise that Nelson would have remained employed with Wachovia and would also work for Bizefficient and receive annual distributions from Bizefficient as an equity partner.

With regard to Nelson's lost wages from Bizefficient, Dr. Trevino calculated those amounts based upon Max Westerfield's statement that Nelson was going to receive a starting salary of $80,000. As for Bizefficient distributions, Dr. Trevino based those amounts on Mr. Westerfield's statement that he was expecting Nelson, as an equity owner, to receive annual distributions "that would have exceeded $35,000 in three years."[3]

Plaintiffs argue that Nelson had a stellar education and employment background.[4] Nelson helped develop the original software for Bizefficient. Plaintiffs note that even though Bizefficient is a start-up company, it has secured $2 million in capital. They further argue that *Southwest Battery Corp. v. Owen* is not applicable. Alternatively, Plaintiffs argue that Nelson's

---

[3] Specifically, Westerfield states: "Nelson was to become a 10% partner, to vest at 2% per year over five years. Based on the conservative estimates in the company's pro forma, Nelson's annual distributions as a member of the LLC would have exceeded $35,000 within three years, according to the vesting schedule."

[4] He was a National Merit Scholar, won a state-wide computer competition in high school, graduated from Carnegie-Mellon University, and had an outstanding ten year employment history.

4

wages with Bizefficient are not speculative.

With regard to Dr. Trevino's opinion that Bizefficient would have issued Nelson annual distributions because of Nelson's position as an equity owner, the Court agrees with Defendants that this portion of Dr. Trevino's opinion must be stricken. Although this Court does not entirely agree with the reasoning set forth in *M & A Technology, Inc. v. iValue Group, Inc.*, 295 S.W.3d 356 (Tex. App.-El Paso 2009, pet. filed), and this Court disagrees with the statement that as a matter of law "[w]here there are no past profits because the plaintiff is embarking upon a new and unproven enterprise, lost profits are not recoverable", with regard to this case Dr. Trevino merely relied upon the Bizefficient's pro forma that the company would potentially make certain profit numbers in the future. Revenue and profit forecasting must be based on objective facts or data and established to a reasonable certainty. With regard to this opinion, Dr. Trevino's opinion does not rise to the necessary "reasonable certainty" threshold. *See e.g. Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840 (Tex. App.-Austin 2006)("The supreme court has consistently held that in order to recover lost profits, the loss amount must be shown by competent evidence with reasonable certainty. The test is a flexible one in order to accommodate the myriad circumstances in which claims for lost profits arise. What constitutes reasonably certain evidence of lost profits is a fact-intensive determination. However, the injured party must do more than show it suffered some lost profits. At a minimum, opinions or estimates of lost profits must be based on

5

objective facts, figures, or data from which the amount of lost profits may be ascertained.")(citing *Southwest Battery Corp. v. Owen*).

As for Defendants' attack on Dr. Trevino's evaluation of Nelson's lost wages from Bizefficient, that analysis is different, and as a result Defendants' motion to strike that portion of the report is denied.

Dr. Trevino generated his calculations on Nelson's lost wages from Bizefficient based upon the undisputed testimony that Max Westerfield stated he was going to pay Nelson a starting salary of $80,000. Accordingly, Dr. Trevino did not base this calculation on speculation. Granted, it is uncertain whether Bizefficient will be a viable business, however, proof of loss of earning capacity is always uncertain and must be left largely to the discretion of the jury. *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943); *see also Osborn v. Computer Sciences Corp.*, No. A-04-cv-158-LY, 2005 WL 5881949 (W.D. Tex. Oct. 20, 2005)(expert's opinion about "front pay" damages admissible).

## Conclusion

Defendants' motion is granted in part and denied in part. With regard to Dr. Trevino's opinion that Bizefficient would have issued Nelson annual distributions because of Nelson's position as an equity owner, the Court agrees with Defendants that this portion of Dr. Trevino's opinion must be stricken. As for Defendants' attack on Dr. Trevino's evaluation of Nelson's lost wages from Bizefficient, Defendants' motion to strike that portion of the

6

report is denied.

It is so ORDERED.

SIGNED this 5th day of February, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE